**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Darryl BROOKS, Defendant-Appellant.**

**No. 81–7446**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

March 8, 1982.

Certiorari Denied June 14, 1982.
See 102 S.Ct. 2943.

George H. Jones (Court-appointed), Birmingham, Ala., for defendant-appellant.

Frank M. Salter, Holly L. Wiseman, Asst. U.S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before RONEY, KRAVITCH and CLARK, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant, Darryl Brooks, was indicted for and convicted of assaulting a federal officer in violation of 18 U.S.C. § 111.[1] Finding all six grounds on appeal without merit, we affirm.

---

1. Appellant received an 18 month sentence to be served consecutively to the sentences that he was serving at the time of the sentencing.

*Background*

On July 25, 1980, appellant was an inmate at the Federal Correctional Institution in Talladega, Alabama. That evening, Lieutenant Wayne Pearson, the officer in charge of the compound in which appellant resided, received a complaint that appellant was roughhousing in the poolroom and had made threatening gestures and comments toward Correctional Officer DeWalt. In response to the complaint, Lieutenant Pearson had Brooks escorted to his office, where he told appellant that he was placing him in administrative detention pending the filing of charges with the Unit Disciplinary Committee because of the alleged threats against Officer DeWalt. Appellant strenuously objected and left Lieutenant Pearson's office extremely agitated, threatening the Lieutenant. Pearson pursued the appellant into an open compound, and with several other officers, surrounded him. Appellant continued to threaten Lieutenant Pearson and began shadow boxing, swinging at Pearson without hitting him. When Lieutenant Pearson reached into his back pocket for his handcuffs, appellant landed a blow to the right side of the Lieutenant's head. The officers then wrestled appellant to the ground, handcuffed him, and forcibly took him to the administrative detention area.

Appellant remained in administrative detention until July 28, 1980, when the Unit Disciplinary Committee (UDC) found him guilty of three violations of prison rules, resulting from the DeWalt incident and recommended to the Institution Disciplinary Committee (IDC) that appellant be placed in disciplinary segregation for thirty-five days. The IDC accepted the UDC recommendation. A month later, on August 25, 1980, while appellant was still serving his 35 days of disciplinary segregation, the UDC considered whether the appellant violated

prison rules by assaulting Lieutenant Pearson. The processing of this violation was delayed because the FBI was investigating the assault. The committee found appellant guilty and referred the matter to the IDC. The appellant did not receive disciplinary segregation as a result of this incident.

On December 5, 1980, Brooks was indicted by a federal grand jury in the Northern District of Alabama for assaulting Lieutenant Pearson. Appellant moved to dismiss the indictment, contending that the Speedy Trial Act was violated by the four month interval between the commission of the offense and the indictment. After an evidentiary hearing, the magistrate recommended that the motion for dismissal be denied. The district court accepted the magistrate's recommendation. After a trial before a jury, appellant was found guilty as charged. This appeal followed.

A. *Speedy Trial*

▮ Section 3161(b) of the Speedy Trial Act, 18 U.S.C. §§ 3161–74, provides that an information or indictment shall be filed within thirty days from the date on which a defendant is arrested or served with a summons in connection with such charges.[2] Appellant contends that being placed in disciplinary segregation during an F.B.I. investigation of his assault on Lieutenant Pearson constituted an arrest and that the four month delay between the time of his segregation and the issuance of the indictment therefore violated the Speedy Trial Act. Appellant further argues that the equal protection clause of the Fourteenth Amendment mandates a finding that appellant's disciplinary segregation was an arrest because "arrest status would have attached to the non-inmate had he been detained for F.B.I. investigation at the local jail."[3]

**2.** 18 U.S.C. § 3161(b) states:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been

charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

**3.** Appellant's Brief at 36.

The magistrate premised his recommendation that the speedy trial motion be dismissed on the ground that neither administrative nor disciplinary segregation placed the appellant in the status of an accused so as to trigger appellant's Sixth Amendment speedy trial rights or his rights under the Speedy Trial Act of 1975. In so doing, the magistrate relied upon decisions addressing the Sixth Amendment right to a speedy trial in which the Fifth Circuit held that confinement of a prisoner in administrative segregation neither constitutes an arrest nor makes a prisoner an accused for speedy trial purposes. *See United States v. Blevins*, 593 F.2d 646 (5th Cir. 1979)[4]; *United States v. Duke*, 527 F.2d 386 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976) ("We cannot accept the argument that administrative segregation of a prisoner is equivalent to his arrest.").

The magistrate also found as a matter of fact that appellant was placed in disciplinary segregation because of violations of prison regulations stemming from incidents involving Officer DeWalt and not from his assault of Lieutenant Pearson. The record supports this finding. An arrest triggers the running of § 3161(b) of the Speedy Trial Act only if the arrest is for the same offense for which the accused is subsequently indicted. *See* 18 U.S.C. §§ 3161(b), 3162. The time limitation for indicting an accused does not begin to run if the accused is arrested for an unrelated offense. Thus, we need not address whether the placement of a prisoner in disciplinary segregation constitutes an arrest for Speedy Trial Act purposes or whether the Fourteenth Amendment mandates such an interpretation. Because the alleged arrest in this case—the disciplinary segregation—was for offenses unrelated to the crime for which appellant was indicted, it could not trigger the running of § 3161(b) of the Speedy Trial Act. Hence, we find appellant's speedy trial claim meritless.

### B. *Unfair Use of Peremptory Challenges by the Prosecutor*

■ Appellant contends that he was denied a fair trial because the prosecutor improperly exercised his peremptory challenges to exclude blacks from the jury by striking four of the five black members of the jury venire. In response to appellant's motion to quash the jury, the prosecutor explained to the trial court that he struck the four black members of the venire, who were teachers or educators, because he preferred to exclude members of those professions from jury panels. The district court denied appellant's motion. We agree.

The Supreme Court in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) recognized that the constitutional rights to equal protection may be infringed by the government's deliberate and continued exclusion of blacks from a jury through the use of peremptory challenges. The actions of a prosecutor in exercising the government's peremptory challenges are presumed, however, to be for the purpose of obtaining "a fair and impartial jury to try the case before the court." *Id.* at 222, 85 S.Ct. at 837; *United States v. Durham*, 587 F.2d 799, 801 (5th Cir. 1979). Thus, "a defendant bears a heavy burden when he seeks to show systematic discrimination of constitutionally significant proportions. It is not enough to base such a constitutional claim on the facts of the single case presented to this court." *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980). *See United States v. Durham, supra* at 801. Here appellant made no showing of any continued or systematic exclusion of blacks from petit juries through the use of peremptory challenges. The district court was therefore correct in rejecting appellant's challenge to the composition of the jury.

### C. *Voir Dire Questioning*

■ Appellant next argues that the district court's failure to ask prospective jurors questions submitted by him operated to deprive him of effective assistance of

---

**4.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) adopted as precedent the decisions of the former Fifth Circuit.

counsel by denying his attorney certain information about the prospective jurors. "The conduct of voir dire of prospective jurors is a matter directed to the sound discretion of the trial judge, subject to the essential demands of fairness." *United States v. Booher*, 641 F.2d 218 (5th Cir. 1981). This discretion extends to the decision whether to ask the questions submitted by counsel. *United States v. Magana-Arevalo*, 639 F.2d 226, 228 (5th Cir. 1981). We will not overturn the trial court's decision on appeal so long as the voir dire conducted by the trial court is capable of giving "reasonable assurance that prejudice would be discovered if present." *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979). Aside from appellant's bare assertion that the district court's refusal to ask his questions deprived him of a fair trial, appellant does not specify in what manner he was prejudiced by the *voir dire*. An examination of the record reveals that the appellant's requested questions did not materially differ from those asked by the court and that the *voir dire* conducted by the court provided reasonable assurance that any prejudice would be discovered if present. Accordingly, we find that the district court did not abuse its discretion by refusing to ask the specific questions submitted by appellant.

### D.  Denial of Motion for Mistrial

Brooks contends that the district court committed reversible error by denying his motion for mistrial based upon the prosecutor's reference to appellant as a "bank robber" in his closing argument. At trial, appellant testified on his own behalf and on cross-examination admitted that he had been convicted of armed robbery. In seeking clarification of the conviction, the prosecutor asked "Is that armed bank robbery?" Appellant answered "No sir." During his closing argument, however, the prosecutor inadvertently referred to appellant as a "bank robber." Appellant's counsel immediately objected and reminded the court and jury that appellant never said he was a bank robber. Moreover, appellant's counsel moved for a mistrial, which the court denied.

The decision whether or not to grant a mistrial is within the sound discretion of the trial court. *E.g., United States v. Greer*, 655 F.2d 51 (5th Cir. 1981); *United States v. Womack*, 654 F.2d 1034, 1040 (5th Cir. 1981). Here, although the prosecutor erred in referring to appellant as a bank robber instead of an armed robber, appellant does not indicate how he was prejudiced by the misstatement. It is far from clear that a conviction for *bank* robbery is more stigmatizing than one for *armed* robbery. Even if it is, appellant in this case was adequately protected from potential prejudice by the immediate objection to and correction of the misstatement by appellant's counsel and by the district court's general instruction to the jury that the statements and arguments of the attorneys are not in evidence and that if the jury's recollection of the evidence differs from the attorneys' representations during closing arguments, then the jury must follow its own recollection. *See United States v. Downs*, 615 F.2d 677, 679 (5th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980). We cannot say that the district court abused its discretion in denying appellant's motion for mistrial.

### E.  Improper Jury Instructions

Appellant further asserts that the district court erred in failing to instruct the jury that in order to find him guilty as charged it must find that the appellant not only assaulted Lieutenant Pearson, but also forcibly resisted, impeded *and* interfered with the Lieutenant. We disagree.

18 U.S.C. § 111 makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with certain federal employees, including correctional officers. The indictment in this case was couched in the conjunctive, charging appellant with forcibly assaulting, resisting, impeding *and* interfering with Lieutenant Pearson. The court, however, charged the jury in the disjunctive in accordance with the language of the statute.

In *Cunningham v. United States*, 356 F.2d 454 (5th Cir. 1966), the Fifth Circuit addressed this issue. The court in that case rejected appellant's argument that because the indictment was drawn in the conjunctive instead of the disjunctive the trial court erred in failing to charge the jury that the Government had to prove that the appellant assaulted, impeded *and* interfered with a federal officer in violation of 18 U.S.C. § 111. The court found that "[t]he fact that the indictment also alleged impeding and interfering neither renders the indictment bad for duplicity nor precludes a conviction if only one of the several allegations linked in the conjunctive in the indictment is proven." *Id.* at 455–56. As we are controlled by the court's holding in *Cunningham v. United States, supra*, we find that the district court's instructions were not erroneous.

### F. Sufficiency of the Evidence

Appellant's final contention is that the evidence was insufficient to support his conviction of forcibly assaulting Lieutenant Pearson. He argues that the evidence merely established that appellant refused to be disciplined by the Lieutenant and not that he hit him. In reviewing the sufficiency of the evidence to support a criminal conviction, "the standard of review is whether, viewing the evidence and all reasonable inferences derived therefrom in the light most favorable to the government, the jury could find the defendant guilty beyond a reasonable doubt. *United States v. Davis*, 666 F.2d 195 at 201 (5th Cir. 1981). As the evidence establishes that appellant struck Lieutenant Pearson on the side of the head with his fist and violently struggled with the correctional officers as they escorted him to the administrative detention area,[5] we find the evidence sufficient for the jury to have concluded beyond a reasonable

doubt that the appellant forcibly assaulted Lieutenant Pearson in violation of 18 U.S.C. § 111. Appellant's conviction is AFFIRMED.

---

5. Appellant concedes that five government witnesses testified that appellant punched Lieutenant Pearson on the side of the head; four defense witnesses stated that he did not. It is of course for the jury to make credibility choices between the evidence presented. *See United States v. Hewitt*, 663 F.2d 1381, 1384–1386 (11th Cir. 1981). For that reason, in determining the sufficiency of the evidence, we "must accept all credibility choices that tend to support the jury's verdict." *Id.; United States v. Hinds*, 662 F.2d 362, 365 (5th Cir. 1981). We, therefore, must give credence to the government witnesses' testimony that appellant struck Lieutenant Pearson on the side of the head.